IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ANACLETO HERRERA, § | |
| § | |
| Plaintiff, § | |
| vs. § | CIVIL ACTION NO. 4:24-cv-00875-P |
| § | |
| AMGAURD INSURANCE COMPANY, § | |
| § | |
| Defendant. § | |
| § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Anacleto Herrera, ("Mr. Herrera"), Plaintiff herein, files this Original Petition against Amguard Insurance Company ("AmGuard") and, in support of his causes of action, would respectfully show the Court the following:

### I.
### THE PARTIES

1. Mr. Herrera is a Texas resident who resides in Tarrant County, Texas.

2. AmGuard is an insurance company doing business in the State of Texas and has already been served in this matter and appeared through counsel of record.

### II.
### JURISDICTION AND VENUE

3. This court has subject matter jurisdiction of this cause of action pursuant to 28 U.S.C. § 1332.

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas, Fort Worth Division.

## III.
## FACTUAL BACKGROUND

1. Mr. Herrera resides in a home located at 3512 Baldwin Ave., Fort Worth TX 76110. He is a named insured under a property insurance policy issued by AmGuard, Policy No. AMH0319341, and effective August 13, 2022 through August 13, 2023.

2. During this policy period, and on or about March 16, 2023, a wind and hail storm ("the storm") hit the Fort Worth, Texas, area producing high winds, large hail and severe rain storm showers.

3. The storm damaged Mr. Herrera's home. At this time, Mr. Herrera has not disclosed his expert and expert opinions under Rule 26(a)(2), but a preliminary investigation has confirmed that the storm caused extensive damage. Specifically, the entirety of the Property's roof was damaged by wind and/or hail such that replacement of the entire roof is necessary.

4. Other areas of the Property were also affected, including the gutters, car port, two windows, and the mailbox.

5. Mr. Herrera filed a claim on his insurance policy, identified as Claim No. AMHO319341-001-001-001. AmGuard assigned property claims associate Billie Stone ("Stone") to evaluate Mr. Herrera's claim. In evaluating and investigating the loss, it was AmGaurd's duty to timely investigate the claim fully and to pay for damages caused by a covered peril (wind/hail/rain) under the policy on a replacement cost value basis.

6. Upon information and belief, Stone authored a letter denying the claim dated March 25, 2024, over nine months after Mr. Herrera notified Amguard of his claim. Stone's letter claims that AmGuard is unable to provide coverage for the roof because the damage is only "cosmetic," citing the following provision in Mr. Herrera's policy:

The following exclusion is added:

**Cosmetic Damage**
Cosmetic damage means:
1. Marring;
2. Pitting; or
3. Other superficial damage;
that alters the appearance of the "roof surfacing" on buildings covered under Coverage A - Dwelling or B – Other Structures caused by the peril of windstorm or hail, but such damage does not prevent the "roof surfacing" from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

7.   Stone's letter grossly misrepresents the damages to Mr. Herrera's roof as cosmetic, when they are actually far more than cosmetic. Mr. Herrera's roof is comprised of steel panels topped with a stone surfacing. Below is a photograph of the underside of Mr. Herrera's shingles, depicting damage far beyond the excluded superficial marring to the surface of an insured's roof.



8. As a result of the storm, Mr. Herrera's roof has suffered functional damage as to the stone-coating granules that provide water shedding capabilities and the dented metal underside that now allows water to pool and collect on the shingles surface. Thus, Stone's letter misrepresents the coverage, the exclusion, and the damages suffered at Herrera's property.

9. Stone's letter accepted coverage for the damage to Mr. Herrera's gutter, downspout, window, and mailbox. AmGuard's estimate to repair or replace this damage fell below Mr. Herrera's policy because AmGuard improperly denied coverage on Mr. Hererra's most valuable loss— his roof.

10. Mr. Herrera retained public adjustor Sarah Mitchell-Butler ("Butler") to assist him in navigating his claim. On April 1, 2024, Butler notified Stone of the functional nature of the roof's damage.

11. Despite widespread damage to Mr. Herrera's home, Stone knowingly refused to replace Mr. Herrera's roof and repair the other covered damages to his Property.

12. Morover, AmGuard's estimate also failed to allow for overhead and profit in his estimate. Industry standards require that overhead and profit be included when a repair estimate implicates three or more trades. Stone included (minimal) gutter/downspout repairs, window glazing repairs, and debris removal. Because the estimate implicated more than three trades, it should have included overhead and profit. But AmGuard and/or Stone improperly omitted overhead and profit from his estimate. Stone knowingly omitted overhead and profit this to save AmGuard money that was clearly owed to Mr. Herrera for damages AmGuard admitted were covered.

13. In sum, AmGuard's estimate mirepresented the scope and cost to repair and replace damaged items to Mr. Herrera's home. These misrepresentations were present in Stone's denial

letter and the accompanying estimate report. In both his report and his letter, Stone knowingly misrepresented the cost and scope of storm damage to Mr. Herrera's home. Stone misrepresented the cost by failing to include the overhead and profit on a job with multiple trades included in his report and listed above. Additionally, Stone and/or AmGuard misrepresented the scope of damages when it failed to accept the full roof replacement or estimate the damage to Mr. Herrera's car port.

14.     Amguard's denial letter and accompanying estimate evidenced an outcome-oriented investigation whereby Stone attempted to avoid replacing the roof – which Stone either knew or should have known was necessary, as it would have been obvious to a reasonable claims associate – and opted to only admit coverage for minor repairs in order to save AmGuard significant money.

15.     In conclusion, AmGuard and/or Stone conducted a substandard investigation and inspection of the property, prepared a report that failed to include all of the damages that were observed during the inspection and ignored obvious damage to Mr. Hererra's home. Additionally, Stone undervalued the damages observed during the inspection and the value of damages admitted on his estimate. Stone then misrepresented the scope and amount of damaged owed under the policy in his claim decision letter. All of this together evidenced an unreasonable investigation. All of these facts, taken together, amount to bad faith and are actionable under the Texas Insurance Code, Section 541.

16.     Frustrated with the outcome of the claim and the obvious damage to his property and underpaying of the claim, Mr. Herrera attempted to address his concerns with AmGuard. All of the damages sought by Mr. Herrera are clearly covered by his policy. Nevertheless, AmGuard refused to change its position or explain its findings in further detail. Moreover, AmGuard's

outcome- oriented investigation of Mr. Hererra's claim resulted in a biased, unfair, and inequitable evaluation of Mr. Herrera's losses on the property.

## IV.
## CAUSES OF ACTION

17. Each of the foregoing paragraphs is incorporated by reference in the following:

**A.  Breach of Contract**

18. AmGuard had a contract of insurance with Plaintiff. AmGuard breached the terms of that contract by wrongfully denying and/or underpaying the claim and Plaintiff was damaged thereby.

**B.  Prompt Payment of Claims Statute**

19. The failure of AmGuard to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code. For example, AmGuard failed to pay for policy benefits owed to Mr. Herrera within the period set forth under Section 542.058, along with any pre-judgment and post-judgment interest allowed under the Texas Finance Code.

20. Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to statutory interest and attorney's fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.  Bad Faith**

21. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

22. Defendant violated Section 541.051 of the Texas Insurance Code by:

    (1) making statements misrepresenting the terms and/or benefits of the policy.

23. Defendant violated Section 541.060 by:

    (1) misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

  (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

  (3) failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

  (4) failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

  (5) refusing to pay the claim without conducting a reasonable investigation with respect to the claim;

24. Defendant violated Section 541.061 by:

  (1) making an untrue statement of material fact;

  (2) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

  (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

  (4) making a material misstatement of law; and

  (5) failing to disclose a matter required by law to be disclosed.

25. Defendant knowingly committed the acts complained of. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to Texas Insurance Code Section 541.152(a)-(b).

### D. Attorneys' Fees

26. Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

27. Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because he is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

28. Plaintiff further prays that he be awarded all reasonable attorneys' fees incurred in prosecuting his causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## V.
## CONDITIONS PRECEDENT

29. All conditions precedent to Plaintiff's right to recover have been fully performed, or have been waived by Defendant.

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Anacleto Herrera prays that, upon final hearing of the case, he recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Mr. Herrera be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Mr. Herrera may show himself to be justly entitled.

Respectfully submitted,

**DALY & BLACK, P.C.**

By: /s/ *Jessica C. Dent*
Richard D. Daly
State Bar No. 00796429
rdaly@dalyblack.com
Jessica C. Dent
State Bar No. 24121561
jdent@dalyblack.com
2211 Norfolk Street, Suite 800
Houston, Texas 77098
Tel: (713) 655-1405
Fax: (713) 655-1587
ecfs@dalyblack.com (service)
**ATTORNEYS FOR PLAINTIFF**

*And*

Michael A. Holmes
State Bar No. 24083191
HOLMES LAW GROUP, PLLC
P.O. Box 38282
Dallas, Texas 75238
Tel: (214) 444-9533
Michael@HolmesLG.com
**LOCAL COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that on September 23, 2024, a true and correct copy of the forgoing was served on all counsel of record by the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

Christopher W. Martin
Russell L. Jones III
Martin, Disiere, Jefferson & Wisdom, L.L.P.
808 Travis, Suite 1100
Houston, TX 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101
martin@mdjwlaw.com
jones@mdjwlaw.com
**ATTORNEYS FOR DEFENDANTS**

*/s/ Jessica C. Dent*
Jessica C. Dent